1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11     SERGIO A. OSEJO,                         No.  2:25-cv-0070 AC P

12                     Plaintiff,

13            v.                                 ORDER

14     BARAJAS, et al.,

15                     Defendants.

16

17          Plaintiff is a state inmate who filed this civil rights action pursuant to 42 U.S.C. § 1983

18     without a lawyer.  He has requested leave to proceed without paying the full filing fee for this

19     action, under 28 U.S.C. § 1915.  ECF Nos. 2, 8.  Plaintiff has submitted a declaration showing

20     that he cannot afford to pay the entire filing fee.  See 28 U.S.C. § 1915(a)(2).  Accordingly,

21     plaintiff's motions to proceed in forma pauperis are granted.[1]

22     ////

23     ////

24     _____

25     [1]  This means that plaintiff is allowed to pay the $350.00 filing fee in monthly installments that
       are taken from the inmate's trust account rather than in one lump sum.  28 U.S.C. §§ 1914(a),
26     1915(b)(1).  As part of this order, the prison is required to remove an initial partial filing fee from
       plaintiff's trust account.  See 28 U.S.C. § 1915(b)(1).  A separate order directed to the appropriate
27     agency requires monthly payments of twenty percent of the prior month's income to be taken
       from plaintiff's trust account.  These payments will be taken until the $350 filing fee is paid in
28     full.  See 28 U.S.C. § 1915(b)(2).

                                           1

1      I.       Statutory Screening of Prisoner Complaints

2          The court is required to screen complaints brought by prisoners seeking relief against "a

3   governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  A

4   claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact."  Neitzke v.

5   Williams, 490 U.S. 319, 325 (1989).  The court may dismiss a claim as frivolous if it is based on

6   an indisputably meritless legal theory or factual contentions that are baseless.  Id. at 327.  The

7   critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable

8   legal and factual basis.  Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by

9   statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

10         In order to avoid dismissal for failure to state a claim a complaint must contain more than

11  "naked assertion[s]," "labels and conclusions," or "a formulaic recitation of the elements of a

12  cause of action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007).  In other words,

13  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

14  statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim upon which the

15  court can grant relief has facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial

16  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

17  inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citation

18  omitted).  When considering whether a complaint states a claim, the court must accept the

19  allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and construe the

20  complaint in the light most favorable to the plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421

21  (1969) (citations omitted).

22      II.      Factual Allegations of the Complaint

23         The complaint alleges that while plaintiff was incarcerated at Mule Creek State Prison

24  ("MCSP"), defendants Barajas, Salcedo, Crosby, Marquina, McTaggar, Whitfor, Covello,

25  Cavucci, Coffin Sr., Tacata, John Doe (officer), John Doe (officer), John Doe (sergeant), and Jane

26  Doe (clinician) failed to protect plaintiff from an assault, were deliberately indifferent to his

27  suicidal ideation, and discriminated against him due to his disabilities, in violation of rights

28  guaranteed to plaintiff by the Eighth and Fourteenth Amendment to the United States

2

1  Constitution, "Coleman,"[2] the Americans with Disabilities Act ("ADA"), and state tort laws.

2  ECF No. 1 at 4-6.  In support of these claims, plaintiff alleges the following.

3      Defendant Covello is the warden of MCSP.  Id. at 5.  When plaintiff told defendant

4  Bajaras about his safety concerns, defendant Barajas told him that "we don't do safety concerns

5  in Mule Creek EOP."  Id.  Two John Doe officers failed to interview him and give him due

6  process to explain his safety concerns.  Id.  Other John Doe officers and sergeants disregarded his

7  safety and health.  Id.

8      In December 2022, defendants Cavucci, Tacata, and mental health staff at MCSP crisis

9  bed knew plaintiff was at risk of assault and/or attempted murder but they did nothing to prevent

10  his return to A yard and stop the January 2, 2023, assault.  Id. at 6.  Defendants Salcedo, Crosby

11  and Marquina were working in A5 building when the attempted murder against plaintiff occurred

12  and they failed to protect him.  Id. at 5.

13      Plaintiff told Jane Doe, a clinician, that he had suicidal ideation.  Id. at 6.  Plaintiff

14  ingested a foreign object, which had to be removed surgically.  Id. Defendants Covello, Barajas

15  and custody and mental health staff at MCSP "discriminat[ed] due to [plaintiff's] disabilities."

16  Id. at 4.

17      All defendants are sued in their individual and official capacities.  Id. 4-6.  Plaintiff seeks

18  declaratory and monetary relief.  Id. at 7.

19  III.    Failure to State a Claim

20      Having conducted the screening required by 28 U.S.C. § 1915A, the court finds that the

21  complaint does not state a valid claim for relief against any defendant.

22      A. Official Capacity Claims

23      Plaintiff cannot state official capacity claims for damages under § 1983 against any

24  _____

25  [2] The court presumes plaintiff is referring to Coleman v. Newsom, No. 2:90-cv-0520 KJM SCR
(E.D. Cal), which is an ongoing class action case concerning deliberate indifference to prisoner's

26  mental health needs under the Eighth Amendment.  See Coleman v. Wilson, 912 F. Supp. 1282,
1323-24 (E.D. Cal. 1995); Coleman v. Brown, 938 F. Supp. 2d 955, 972 (E.D. Cal. 2013);

27  Coleman v. Brown, 28 F. Supp. 3d, 1068, 1106 (E.D. Cal. 2014); see also Coleman v. Brown,
756 F. App'x 677, 679 (9th Cir. 2018).

28

1    defendant because such claims are barred by sovereign immunity under the Eleventh

2    Amendment.  Plaintiff also fails to state individual capacity claims against defendants Covello,

3    McTagger, Whitfor, and Coffin Sr. because he does not provide any factual allegations that link

4    any of them to any affirmative act or omission that shows a violation of plaintiff's federal rights.

5    Plaintiff cannot sue defendants Covello and Coffin Sr. under 42 U.S.C. § 1983 based solely on

6    their supervisory roles.  Instead, he must allege how these supervisors (1) personally participated

7    in, (2) directed, or (3) knew of the violations and failed to prevent them.

8            B.  Eighth Amendment Claims

9            Plaintiff fails to state a failure to protect claim under the Eighth Amendment against

10   defendants Barajas, Salcedo, Crosby, Marquina, John Doe officers and sergeants, Cavucci, and

11   Tacata because the allegations are vague and conclusory.  Plaintiff alleges that there was a serious

12   risk of harm that he would be assaulted and/or killed, however, he does not alleged who (e.g. a

13   person, a group, etc) posed or created the risk that he would be assaulted and/or killed and how

14   and why that person or persons posed this risk to plaintiff (e.g. what about plaintiff made him a

15   target or susceptible to the risk).  He similarly alleges that defendants knew about and

16   "deliberately disregarded" the serious risk to his health and safety, but he does not provide any

17   factual allegations of what each defendant knew, how and when they learned this information,

18   and what each defendant did or failed to do to protect him before, during, and/or after the assault.

19   Moreover, the allegations that (1) defendant Barajas made a statement, at some point in time, that

20   Mule Creek EOP does not do safety concerns, and (2) that defendants Salcedo, Crosby, and

21   Marquina were present during the attack, are insufficient to support an inference that these

22   defendants had the culpable state of mind necessary for an Eighth Amendment claim.

23           Plaintiff also fails to state an Eighth Amendment claim for deliberate indifference to his

24   serious medical need against defendant Jane Doe because his allegation that he told defendant

25   Jane Doe that he had suicidal ideation is not enough for this court to infer that defendant Jane Doe

26   actually drew the inference that plaintiff was suicidal and at serious risk of harm absent

27   intervention.  Plaintiff does not allege what other information defendant Jane Doe had about

28   plaintiff's suicidal ideation, how she responded to his disclosure that he had suicidal ideation and

4

1  his ingestion of a foreign object, or even what the foreign object was.  At most, plaintiff's

2  allegations suggest negligence.

3      It is also unclear how plaintiff's claim against defendant Jane Doe is related to plaintiff's

4  claims against the other defendants for failure to protect.  Plaintiff is informed that to the extent

5  these claims are unrelated, he cannot pursue them in one action; he must pursue them in separate

6  lawsuits.

7      C.  Fourteenth Amendment Claims

8      To the extent plaintiff is seeking relief under both the Eighth and Fourteenth Amendments

9  based on the failure to protect, the Eighth Amendment's Cruel and Unusual Punishment Clause

10 governs because plaintiff's incarceration in the California Department of Corrections and

11 Rehabilitation indicates that he is a convicted prisoner rather than a pretrial detainee.  To the

12 extent plaintiff is also attempting to allege a procedural due process violation based on John Doe

13 #1's and John Doe #2's failure to interview him about his safety concerns, he fails to do so

14 because plaintiff has not identified a violation of any protected liberty or property interest.

15     D.  Americans with Disabilities Act ("ADA") Claim

16     Plaintiff fails to state an ADA discrimination claim because plaintiff has not presented

17 factual allegations from which the court can infer that he was excluded from participating in or

18 denied the benefits of any programs, services, or activities provided by a public entity (e.g.

19 MCSP) or otherwise discriminated against by a public entity; that he was otherwise qualified to

20 participate or receive those benefits; and that the exclusion, denial, or discrimination was on the

21 basis of his disability.   Wheelchair dependency and a single conclusory statement that defendants

22 discriminated against him because of his disabilities falls far short from what is necessary to

23 properly state an ADA discrimination claim, and particularly an ADA claim that seeks monetary

24 damages, which also requires a showing of deliberate indifference.

25     E.  *Coleman*-Based Claim

26     To the extent plaintiff is attempting to base a claim on the violation of an order in

27 Coleman, plaintiff is informed that court orders in Coleman do not provide him with an

28 independent claim for relief in this action.  If plaintiff believes his rights under the Coleman class

5

1    action remedial orders have been violated, he must assert those claims in Coleman.  If, however,

2    he believes his rights were violated under the Eighth Amendment or other federal constitutional

3    or statutory right, he may allege those claims in this action.

4              F.   State Law Claims (Tom Bane Act, Medical Malpractice, Negligence)

5         Plaintiff fails to state medical malpractice, negligence, and/or Tom Bane Act claims

6    because the complaint does not allege compliance with the California Government Claims Act

7    ("GSA"), which requires plaintiff to timely present (within six months after the challenged

8    incident) and act upon his state law claims before filing suit.[3]

9         **Because of the defects discussed above, the court will not order the complaint to be**

10   **served on defendants.**  Plaintiff may try to fix these problems by filing an amended complaint.

11   In deciding whether to file an amended complaint, plaintiff is provided with the relevant legal

12   standards governing his potential claims for relief which are attached to this order.  See

13   Attachment A.

14       IV.   Legal Standards Governing Amended Complaints

15        If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions

16   about which he complains resulted in a deprivation of his constitutional rights.  Rizzo v. Goode,

17   423 U.S. 362, 370-71 (1976).  The complaint must also allege in specific terms how each named

18   defendant is involved.  Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981).

19   There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or

20   connection between a defendant's actions and the claimed deprivation.  Id.; Johnson v. Duffy,

21   588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, "[v]ague and conclusory allegations of official

22   participation in civil rights violations are not sufficient."  Ivey v. Bd. of Regents, 673 F.2d 266,

23   268 (9th Cir. 1982) (citations omitted).

24        Plaintiff is also informed that the court cannot refer to a prior pleading in order to make

25   his amended complaint complete.  Local Rule 220 requires that an amended complaint be

26

27   [3]  The requirement under the GSA is different from the exhaustion requirement under the Prison
     Litigation Reform Act ("PLRA"), which requires exhaustion of claims for violations of *federal*
28   rights.

complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes any prior complaints.  Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted).  Once plaintiff files an amended complaint, any previous complaint no longer serves any function in the case.  **Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.**

V.       Plain Language Summary of this Order for Party Proceeding Without a Lawyer

Your complaint will not be served because the facts alleged are not enough to state a claim.  You are being given a chance to fix these problems by filing an amended complaint.  If you file an amended complaint, pay particular attention to the legal standards attached to this order.  Be sure to provide facts that show exactly what each defendant did to violate your rights.  **Any claims and information not in the amended complaint will not be considered.**

CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1.  Plaintiff's request for leave to proceed in forma pauperis (ECF Nos. 2, 8) are GRANTED.

2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the appropriate agency filed concurrently herewith.

3.  Plaintiff's complaint fails to state a claim upon which relief may be granted, see 28 U.S.C. § 1915A, and will not be served.

4.  Within thirty days from the date of service of this order, plaintiff may file an amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice.  The amended complaint must bear the docket number assigned this case and must be labeled "First Amended Complaint."

5.  Failure to file an amended complaint in accordance with this order will result in a recommendation that this action be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

1    6.  The Clerk of the Court is directed to send plaintiff a copy of the prisoner complaint

2  form used in this district.

3  DATED: October 29, 2025

4  _____
   ALLISON CLAIRE

5  UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                                              Attachment A

2           This Attachment provides, for informational purposes only, the legal standards that may

3    apply to your claims for relief.  Pay particular attention to these standards if you choose to file an

4    amended complaint.

5           I.      Legal Standards Governing Amended Complaints

6           If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions

7    about which he complains resulted in a deprivation of his constitutional rights.  Rizzo v. Goode,

8    423 U.S. 362, 370-71 (1976).  The complaint must also allege in specific terms how each named

9    defendant is involved.  Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981).

10   There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or

11   connection between a defendant's actions and the claimed deprivation.  Id.; Johnson v. Duffy,

12   588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, "[v]ague and conclusory allegations of official

13   participation in civil rights violations are not sufficient."  Ivey v. Bd. of Regents, 673 F.2d 266,

14   268 (9th Cir. 1982) (citations omitted).

15          Plaintiff is also informed that the court cannot refer to a prior pleading in order to make

16   his amended complaint complete.  Local Rule 220 requires that an amended complaint be

17   complete in itself without reference to any prior pleading.  This is because, as a general rule, an

18   amended complaint supersedes any prior complaints.  Loux v. Rhay, 375 F.2d 55, 57 (9th Cir.

19   1967) (citations omitted).  Once plaintiff files an amended complaint, any previous complaint no

20   longer serves any function in the case.  Therefore, in an amended complaint, as in an original

21   complaint, each claim and the involvement of each defendant must be sufficiently alleged.

22          II.     42 U.S.C. § 1983 Civil Rights Claims

23          Section 1983 provides in relevant part:

24                  Every person who, under color of any statute, ordinance, regulation,
                    custom, or usage, of any State or Territory or the District of
25                  Columbia, subjects, or causes to be subjected, any citizen of the
                    United States or other person within the jurisdiction thereof to the
26                  deprivation of any rights, privileges, or immunities secured by the
                    Constitution and laws, shall be liable to the party injured in an action
27                  at law, suit in equity, or other proper proceeding for redress . . . .

28          42 U.S.C. § 1983.  Accordingly, "the requirements for relief under [§] 1983 have been

                                                      1

1    articulated as: (1) *a violation of rights protected by the Constitution or created by federal statute,*

2    (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law."

3    Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991) (emphasis added).

4          An officer's violation of state laws and/or regulations is not grounds for a § 1983 claim.

5    See Case v. Kitsap County Sheriff's Dept., 249 F.3d 921, 930 (9th Cir. 2001) (quoting Gardner v.

6    Howard, 109 F.3d 427, 430 (8th Cir 1997) ("[T]here is no § 1983 liability for violating prison

7    policy. [Plaintiff] must prove that [the official] violated his constitutional right . . .")).  Violations

8    of state law and regulations cannot be remedied under § 1983 *unless* they *also* violate a federal

9    constitutional or statutory right.  See Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir. 2009)

10    (section 1983 claims must be premised on violation of federal constitutional right); Sweaney v.

11    Ada Cty., Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (section 1983 creates cause of action for

12    violation of federal law); Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370 (9th Cir. 1996)

13    (federal and state law claims should not be conflated; "[t]o the extent that the violation of a state

14    law amounts the deprivation of a state-created interest that reaches beyond that guaranteed by the

15    federal Constitution, Section 1983 offers no redress").

16          III.    Personal Involvement and Supervisory Liability

17          "Liability under § 1983 must be based on the personal involvement of the defendant,"

18    Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing May v. Enomoto, 633 F.2d

19    164, 167 (9th Cir. 1980)), and "[v]ague and conclusory allegations of official participation in civil

20    rights violations are not sufficient," Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)

21    (citations omitted).  "A person 'subjects' another to the deprivation of a constitutional right,

22    within the meaning of section 1983, if he does an affirmative act, participates in another's

23    affirmative acts, or omits to perform an act which he is legally required to do that causes the

24    deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.

25    1978) (citation omitted).  In other words, to state a claim for relief under section 1983, plaintiff

26    must link each individual defendant with some affirmative act or omission that shows a violation

27    of plaintiff's federal rights.

28          Furthermore, "[t]here is no respondeat superior liability under section 1983," Taylor v.

2

1   List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted), which means that a supervisor

2   cannot be held responsible for the conduct of his subordinates just because he is their supervisor.

3   "A supervisor is only liable for constitutional violations of his subordinates if the supervisor

4   participated in or directed the violations, or knew of the violations and failed to act to prevent

5   them." Id.

6          IV.      Joinder of Parties and Claims

7          A plaintiff may properly assert multiple claims against a single defendant in a civil action.

8   Fed. Rule Civ. P. 18.  In addition, a plaintiff may join multiple defendants in one action where

9   "any right to relief is asserted against them jointly, severally, or in the alternative with respect to

10  or arising out of the same transaction, occurrence, or series of transactions and occurrences" and

11  "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P.

12  20(a)(2).  However, unrelated claims against different defendants must be pursued in separate

13  lawsuits.  See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).  This rule is intended "not only

14  to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to

15  ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3

16  the number of frivolous suits or appeals that any prisoner may file without prepayment of the

17  required fees.  28 U.S.C. § 1915(g)." Id.

18         V.       Sovereign Immunity, Official and Individual Capacity Claims

19         "The Eleventh Amendment bars suits against the State or its agencies for all types of

20  relief." See Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ., 616 F.3d

21  963, 967 (9th Cir. 2010); Fireman's Fund Ins. Co., v. City of Lodi, Cal., 302 F.3d 928, 957 n.28

22  (9th Cir. 2002) ("The Eleventh Amendment bars suits which seeks either damages or injunctive

23  relief against a state, 'an arm of the state', its instrumentalities, or its agencies."). Claims for

24  damages against state officials acting in their *official capacity* are barred by sovereign immunity

25  because "a suit against a state official in his or her official capacity is not a suit against the official

26  but rather is a suit against the official's office" and therefore "no different from a suit against the

27  State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citations omitted).

28         However, the Eleventh Amendment does not bar suits seeking damages against state

3

1   officials in their individual capacities. Hafer v. Melo, 502 U.S. 21, 30-31 (1991).  Nor does it bar

2   suits seeking only prospective declaratory or injunctive relief against state officers sued in their

3   official capacities. Will, 491 U.S. at 71 (state officials sued in their official capacity for

4   prospective relief are "person[s]" within the meaning of § 1983").

5       VI.    Eighth Amendment Claims

6           A.  Failure to Protect

7           "[A] prison official violates the Eighth Amendment only when two requirements are met.

8   First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or

9   omission must result in the denial of the minimal civilized measure of life's necessities." Farmer

10  v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted).  Second,

11  the prison official must subjectively have a sufficiently culpable state of mind, "one of deliberate

12  indifference to inmate health or safety." Id. (internal quotation marks and citations omitted).  The

13  official is not liable under the Eighth Amendment unless he "knows of and disregards an

14  excessive risk to inmate health or safety." Id. at 837.  He must then fail to take reasonable

15  measures to lessen the substantial risk of serious harm.  Id. at 847.

16          A prison official need not "believe to a moral certainty" that an inmate is at risk of harm

17  "before [he] is obligated to take steps to prevent such an assault," *but* "he must have more than a

18  mere suspicion that an attack will occur."  Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986)

19  (citation omitted).  Negligent failure to protect an inmate from harm is not actionable under

20  § 1983.  Id. at 835.

21          B.  Deliberate Indifference to Serious Medical Need

22          "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate

23  must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091,

24  1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This requires plaintiff

25  to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition

26  could result in further significant injury or the unnecessary and wanton infliction of pain,'" and

27  (2) "the defendant's response to the need was deliberately indifferent."  Id. (some internal

28  quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

4

1    "A heightened suicide risk or an attempted suicide is a serious medical need." Conn v.

2    City of Reno, 591 F.3d 1081, 1095 (9th Cir. 2010), vacated, 563 U.S. 915 (2011), reinstated in

3    relevant part on remand, 658 F.3d 897 (9th Cir. 2011).

4    A plaintiff can establish deliberate indifference "by showing (a) a purposeful act or failure

5    to respond to a prisoner's pain or possible medical need and (b) harm caused by the

6    indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference "may appear

7    when prison officials deny, delay or intentionally interfere with medical treatment, or it may be

8    shown by the way in which prison physicians provide medical care." Hutchinson v. United

9    States, 838 F.2d 390, 394 (9th Cir. 1988) (citation omitted). "[A] complaint that a physician has

10    been negligent in diagnosing or treating a medical condition does not state a valid claim of

11    medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106.

12    A difference of opinion between an inmate and prison medical personnel—or between

13    medical professionals—regarding the appropriate course of treatment does not by itself amount to

14    deliberate indifference to serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th

15    Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). A difference of opinion rises to

16    the level of deliberate indifference when "the chosen course of treatment 'was medically

17    unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive

18    risk to [the prisoner's] health.'" Toguchi, 391 F.3d at 1058 (alteration in original) (quoting

19    Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

20    VII.    Fourteenth Amendment Claims

21        A.  Failure to Protect

22    "The Fourteenth Amendment, and not the Eighth Amendment, governs cruel and unusual

23    punishment claims of pretrial detainees." Byrd v. Maricopa Cnty. Bd. of Supervisors, 845 F.3d

24    919, 924 n.2 (9th Cir. 2017); see also Mendiola-Martinez v. Arpaio, 836 F.3d 1239, 1246 n.5 (9th

25    Cir. 2016) ("Eighth Amendment protections apply only once a prisoner has been convicted of a

26    crime, while pretrial detainees are entitled to the potentially more expansive protections of the

27    Due Process Clause of the Fourteenth Amendment."); Castro v. County of Los Angeles, 833 F.3d

28    1060, 1067-68 (9th Cir. 2016) (en banc) ("Inmates who sue prison officials for injuries suffered

5

1    while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment

2    Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause." (citing

3    Bell v. Wolfish, 441 U.S. 520, 535 (1979))).

4         To state a claim for failure to protect under the Fourteenth Amendment, a pretrial detainee

5    must allege facts showing that:

6            (1) The defendant made an intentional decision with respect to the
        conditions under which the plaintiff was confined;

7

8            (2) Those conditions put the plaintiff at substantial risk of suffering
        serious harm;

9            (3) The defendant did not take reasonable available measures to abate
        that risk, even though a reasonable officer in the circumstances

10           would have appreciated the high degree of risk involved—making
        the consequences of the defendant's conduct obvious; and

11

12           (4) By not taking such measures, the defendant caused the plaintiff's
        injuries.

13   Castro, 833 F.3d at 1071.  The allegations must demonstrate "more than negligence but less than

14   subjective intent—something akin to reckless disregard," and "the defendant's conduct must be

15   objectively unreasonable."  Id.

16        B.  Procedural Due Process

17        The Fourteenth Amendment procedural guarantees apply only when a constitutionally

18   protected liberty or property interest is at stake.  Johnson v. Ryan, 55 F.4th 1167, 1179 (9th Cir.

19   2022).  "[L]awfully incarcerated persons retain only a narrow range of protected liberty interests."

20   Chappell v. Mandeville, 706 F.3d 1052, 1062–63 (9th Cir. 2013) (quoting Hewitt v. Helms, 459

21   U.S. 460, 467 (1983).

22        To state a cognizable Fourteenth Amendment due process claim, plaintiff must identify a

23   protected liberty or property interest at stake.  Ingraham v. Wright, 430 U.S. 651, 672 (1977)

24   ("We must first ask whether the asserted individual interest are encompassed within the

25   Fourteenth's protection . . . [I]f protected interest are implicated, we then must decide what

26   procedures constitute 'due process of law.'"); Johnson, 55 F.4th at 1179 ("In order to analyze a

27   procedural due process claim, we engage in a two-step analysis: First, we determine whether the

28   inmate was deprived of a constitutionally protected liberty or property interest.  Second, we

6

1    examine whether that deprivation was accompanied by sufficient procedural protections.")

2           Liberty interests can arise both from the Constitution and from state law.  See Wilkinson

3    v. Austin, 545 U.S. 209, 221 (2005).  The constitution, in and of itself, does not protect prisoners

4    from limitations on their liberty that are "within the normal limits or range of custody which the

5    conviction has authorized the State to impose."  Meachum v. Fano, 427 U.S. 215, 225 (1976).

6    Similarly, "to find a violation of a state-created liberty interest the hardship imposed on the

7    prisoner must be 'atypical and significant . . . in relation to the ordinary incidents of prison life."

8    Chappel v. Mandeville, 706 F.3d 1052, 1064 (9th Cir. 2013).

9        VIII.    Americans with Disability Act ("ADA")

10           "The ADA contains five titles: Employment (Title I), Public Services (Title II), Public

11    Accommodations and Services Operated by Private Entities (Title III), Telecommunications

12    (Title IV), and Miscellaneous Provisions (Title V)."  See Americans with Disability Act of 1990,

13    Pub.L. No. 101-336, 104 Stat. 327, 327-28 (1990).  Title II of the ADA applies to inmates within

14    state prisons.  Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206 (1998).

15           To state a claim for violation of Title II of the ADA, a plaintiff must allege four elements:

16            (1) [H]e is an individual with a disability; (2) he is otherwise
        qualified to participate in or receive the benefit of some public

17            entity's services, programs, or activities; (3) he was either excluded
        from participation in or denied the benefits of the public entity's

18            services, programs, or activities, or was otherwise discriminated
        against by the public entity; and (4) such exclusion, denial of

19            benefits, or discrimination was by reason of [his] disability.

20    O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1060 (9th Cir. 2007); see also Thompson v. Davis,

21    295 F.3d 890, 895 (9th Cir. 2002); Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir. 2001).

22           "A plaintiff can allege disability discrimination in the provision of inmate services,

23    programs, or activities under the ADA or the Rehabilitation Act by pleading either (1)

24    discrimination based on disparate treatment or impact, or (2) denial of reasonable modifications

25    or accommodations."  Cravotta v. County of Sacramento, 717 F. Supp. 3d 941, 956 (E.D. Cal.

26    2024); see Dunlap v. Ass'n of Bay Area Gov'ts, 996 F. Supp. 962, 965 (N.D. Cal. 1998) ("[T]he

27    ADA not only protects against disparate treatment, it also creates an affirmative duty in some

28    circumstances to provide special, preferred treatment, or 'reasonable accommodation.'").  To

1   support such a disparate impact claim, a plaintiff must demonstrate that the policy has the "effect

2   of denying meaningful access to public services." <u>K.M. ex rel. Bright v. Tustin Unified Sch. Dist.</u>,

3   725 F.3d 1088, 1102 (9th Cir. 2013).  Although § 12132 does not expressly provide for

4   reasonable accommodations, the implementing regulations provide that "[a] public entity shall

5   make reasonable modifications in policies, practices, or procedures when the modifications are

6   necessary to avoid discrimination on the basis of disability, unless the public entity can

7   demonstrate that making the modifications would fundamentally alter the nature of the service,

8   program, or activity."  28 C.F.R. § 35.130(b)(7)(i); <u>see also</u> <u>Pierce v. County of Orange</u>, 526 F.3d

9   1190, 1215 (9th Cir. 2008).

10          "[I]nsofar as Title II [of the ADA] creates a private cause of action for damages against

11   the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates

12   state sovereign immunity."  <u>United States v. Georgia</u>, 546 U.S. 151, 159 (2006) (emphasis in

13   original).  The proper defendant in an ADA action is the public entity responsible for the alleged

14   discrimination.  <u>United States v. Georgia</u>, 546 U.S. 151, 153 (2006).  State correctional facilities

15   are "public entities" within the meaning of the ADA.  <u>See</u> 42 U.S.C. § 12131(1)(A) & (B); <u>Penn.</u>

16   <u>Dept. of Corrs. v. Yeskey</u>, 524 U.S. 206, 210 (1998); <u>Armstrong v. Wilson</u>, 124 F.3d 1019, 1025

17   (9th Cir. 1997).  ADA claims may not be brought against state officials in their individual

18   capacities.  <u>Stewart v. Unknown Parties</u>, 483 F. App'x 374, 374 (9th Cir. 2012) (citing <u>Lovell v.</u>

19   <u>Chandler</u>, 303 F.3d 1039, 1052 (9th Cir. 2002)); <u>Garcia v. S.U.N.Y. Health Scis. Ctr. of</u>

20   <u>Brooklyn</u>, 280 F.3d 98, 107 (2d Cir. 2001) ("[N]either Title II of the ADA nor § 504 of the

21   Rehabilitation Act provides for individual capacity suits against state officials." (citations

22   omitted)).

23          Compensatory damages are available under the ADA when plaintiff demonstrates that the

24   discrimination he experienced was the result of deliberate indifference, which "requires both

25   knowledge that a harm to a federally protected right is substantially likely, and a failure to act

26   upon that the likelihood."  <u>Duvall</u>, 260 F.3d at 1139 (citations omitted).  "When the plaintiff has

27   alerted the public entity to his need for accommodation . . ., the public entity is on notice that an

28   accommodation is required, and the plaintiff has satisfied the first element of the deliberate

8

1  indifference test." Id. at 1139.  "[I]n order to meet the second element of the deliberate

2  indifference test, a failure to act must be a result of conduct that is more than negligent, and

3  involves an element of deliberateness."  Id. (citations omitted).

4        IX.      Violations of Consent Decrees or Remedial Plans

5        A plaintiff is free to allege independent claims for relief based on the violations of his

6  rights under federal law, Hiser v. Franklin, 94 F.3d 1287, 1291 (9th Cir. 1996), but he may not

7  rely on the violation of consent decrees or remedial plans in other cases to state a claim.  See

8  Frost v. Symington, 197 F.3d 348, 358-59 (9th Cir. 1999).  Relief for a violation of a consent

9  decree or remedial plan must be pursued in the case in which the plan was issued.  Id.

10       X.       Violations of State Laws

11       To state a viable state law claim against a state employee or entity, a plaintiff must allege

12  compliance with the Government Claims Act.  See State v. Superior Court (Bodde), 32 Cal. 4th

13  1234, 1237 (2004) (for claims against the state, timely presentation of a claim under the

14  Government Claims Act is an element of the cause of action and must be pled in the complaint);

15  Cal. Gov't Code § 900.6 (defining "State" as "the State and any office, officer, department,

16  division, bureau, board, commission or agency of the State claims against which are paid by

17  warrants drawn by the Controller").  This requirement applies in federal court.  See Clapp v. City

18  and County of San Francisco, 846 F. App'x 525, 526 (9th Cir. 2021) (affirming dismissal where

19  plaintiff "failed to allege facts sufficient to show that he complied with, or was excused from, the

20  claim presentment requirement of the California Government Claims Act" (citation omitted)).

21

22

23

24

25

26

27

28